**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3493-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSHUA ARIAS-LIZANO, a/k/a
JOSHUA ARIAS, JOSHUA
ARIASLIZANO, JOSHUA ARISA,
JOSHUA ARISALIZANO, and
JOSHUA LIZANO,

     Defendant-Appellant.

_____

Submitted February 26, 2019 – Decided April 3, 2019

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 17-05-0244.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan L. Romeo, Assistant Deputy Public Defender, of counsel and on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Paul H. Heinzel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Joshua Arias-Lizano, who was charged with multiple drug offenses, filed a motion to suppress evidence obtained from an anticipatory warrant to search a package addressed to defendant at the United States Post Office in Bound Brook, and his residence. After the court denied the motion to suppress, defendant pleaded guilty to two counts of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10a(1). The trial court sentenced him to one year probation.

Defendant then filed this appeal. He presents the following argument for consideration:

> THE DENIAL OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FOUND DURING A SEARCH OF HIS HOME MUST BE REVERSED, BECAUSE NEITHER THE MERE ACCEPTANCE OF A PACKAGE DELIVERY OF POSSIBLE CDS AT THE HOME, NOR THE UNCORROBORATED ALLEGATIONS OF THIRD PARTIES OFFERED IN SUPPORT OF THE SEARCH WARRANT APPLICATION WERE SUFFICIENT, AS A MATTER OF LAW, TO ESTABLISH PROBABLE CAUSE TO SEARCH THE HOME.

At the motion to suppress and on appeal, defendant conceded there was probable cause to search the package upon delivery. As a result, defendant's only argument on appeal is that the warrant to search his residence should not have been issued, and the motion to suppress should have been granted. We reject this argument and affirm.

On March 27, 2017, a Superior Court judge issued the anticipatory search warrant of the package and defendant's residence, "to be executed upon [defendant] taking physical possession of [the] package after delivery." Detective Jason Gianotto, who was assigned to the Somerset County Prosecutor's Office Organized Crime and Narcotics Task Force, testified before the judge to apply for the warrant. Since our review is limited to the information contained within the four corners of this testimony, see State v. Wilson, 178 N.J. 7, 14 (2003), we begin our review with a summary of those facts.

Detective Gianotto first set forth his extensive experience as a patrolman for fifteen years and his specialized training in drug interdiction. He further testified to the experience and reliability of his patrol and narcotics-trained K-9, which had performed approximately ninety drug sniffs and made fifty-five positive alerts, from which CDS was discovered fifty-four times.

A-3493-17T1

In support of the warrant, Detective Gianotto testified about information provided by United States Postal Service employees. On March 25, 2017, the post office in Bound Brook received a package addressed to defendant that smelled of marijuana. Detective Gianotto brought his K-9 to the post office, where the dog sniffed the package and provided a positive alert. The detective further testified that the package "fit the pattern of [forty-two] other packages that have been addressed to the same location that had been delivered this year[,] coming from either the [s]tates of California, Washington, or Colorado . . . ." Defendant often called the post office to check on the arrival of the packages, and when he would arrive to pick them up, "he had the odor of marijuana on him."

Lastly, Detective Gianotto testified that, over several months, defendant's landlord observed many cars, from New York and other states, parked at defendant's residence. Occupants of these cars would exchange duffle bags with defendant. Additionally, the landlord observed a case of butane had recently been delivered to defendant's residence; Detective Gianotto testified that butane is known by police as a product used to make "hash oil."

Based on Detective Gianotto's testimony, a Superior Court judge authorized the anticipatory search warrant on the package and defendant's

A-3493-17T1

residence. The judge found "[p]articularly telling" the "probable drug activity occurring" at defendant's residence, based on the landlord's observations. The judge further found the K-9 "extremely reliable," and thus relied on its "positive response to the sniffing of the package." The judge concluded that this evidence, along with "the previous deliveries of packages to this residence[,] clearly gives rise to probable cause that criminal activity, [i.e.] drug activity is afoot."

On October 31, 2017, Judge Bradford Bury heard oral argument regarding defendant's motion to suppress the contraband seized from his residence during the execution of the warrant. Judge Bury described the appropriate standard for probable cause, and recognized that the issuing judge's finding of probable cause should receive substantial deference. He acknowledged the requirement of considering the totality of the circumstances.

Judge Bury proceeded to review all of the information in the affidavit, including: the landlord's observations of defendant's butane delivery, and the continuous exchanges of duffle bags between defendant and out-of-state individuals; the K-9 dog's positive alert of CDS in the package addressed to defendant; the previous forty-two packages sent to defendant, and his smell of marijuana upon arrival at the post office. In denying the suppression motion, the judge concluded:

> Each one of these individual facts as a standalone fact would not . . . be sufficient to establish probable cause, but under the totality of circumstances . . . they do establish probable cause to believe that not only would marijuana be found inside the package but . . . also, inside . . . [defendant's] residence . . . .

Under the Constitutions of the United States and New Jersey, individuals are protected from unreasonable searches and seizures, and no warrant shall issue except upon probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Unless a search falls within one of the recognized exceptions to the warrant requirement, the police must first obtain a warrant from a neutral judicial officer as a prerequisite to a search. State v. Sullivan, 169 N.J. 204, 210 (2001) (citing State v. Cooke, 163 N.J. 657, 664 (2000)). "Before issuing a warrant, the judge must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." Ibid. (citing State v. Laws, 50 N.J. 159, 173 (1967)).

The concept of probable cause "eludes precise definition." Sullivan, 169 N.J. at 210 (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000)). Courts generally accept it to mean "less than legal evidence necessary to convict though more than mere naked suspicion." Id. at 210-11 (quoting State v. Mark, 46 N.J. 262, 271 (1966)). Probable cause is "consistently characterized . . . as a

6

common-sense, practical standard for determining the validity of a search warrant." State v. Novembrino, 105 N.J. 95, 120 (1987). It is met when police have "a 'well-grounded' suspicion that a crime has been or is being committed." Ibid. (quoting State v. Waltz, 61 N.J. 83, 87 (1972)).

In identifying the competing policy concerns behind the probable cause requirement, our Supreme Court explained:

> Probable cause is a flexible, nontechnical concept. It includes a conscious balancing of the governmental need for enforcement of the criminal law against the citizens' constitutionally protected right of privacy. It must be regarded as representing an effort to accommodate those often competing interests so as to serve them both in a practical fashion without unduly hampering the one or unreasonably impairing the significant content of the other.
>
> [State v. Kasabucki, 52 N.J. 110, 116 (1968) (citing State v. Davis, 50 N.J. 16, 24 (1967)).]

The United States Supreme Court similarly described probable cause as a "practical, nontechnical conception." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Probable cause requires more than mere suspicion; it requires a showing of a "fair probability" that criminal activity is taking place. State v. Demeter, 124 N.J. 374, 380-81 (1991) (quoting Gates, 462 U.S. at 238).

A-3493-17T1

Courts must base a probable cause determination on the totality of the circumstances and consider the probabilities. State v. Jones, 179 N.J. 377, 389 (2004) (citing Schneider v. Simonini, 163 N.J. 336, 361 (2000)). The court must also apply a qualitative analysis to the unique facts and circumstances of any given case. State v. Keyes, 184 N.J. 541, 556 (2005) (citing Jones, 179 N.J. at 390). The analysis comes down to a "practical, common-sense decision." Jones, 179 N.J. at 390 (quoting State v. Smith, 155 N.J. 83, 93 (1998)). "[W]hether or not probable cause exists 'involves no more than a value judgment upon a factual complex rather than an evident application of a precise rule of law, and indeed a value judgment which inevitably reflects the seasoning and experience of the one who judges.'" Schneider, 163 N.J. at 362 (quoting State v. Funicello, 60 N.J. 60, 72-73 (1972) (Weintraub, C.J., concurring)).

For these reasons, a reviewing judge "should pay substantial deference" to the discretionary determination of the issuing judge. Kasabucki, 52 N.J. at 117. Review of a warrant's adequacy "is guided by the flexible nature of probable cause and by the deference shown to issuing courts that apply that doctrine." Sullivan, 169 N.J. at 217.

> [W]arrant applications "should be read sensibly rather than hypercritically and should be deemed legally sufficient so long as they contain[] factual assertions which would lead a prudent [person] to believe that a

> crime [has] been committed and that evidence . . . of the crime [is] at the place sought to be searched."
>
> [Ibid. (alterations in original) (quoting Laws, 50 N.J. at 173).]

"[W]hen the adequacy of the facts offered to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." Jones, 179 N.J. at 388-89 (quoting Kasabucki, 52 N.J. at 116). It is therefore well settled that a search executed pursuant to a warrant is presumed valid, and the defendant bears the burden of proving lack of probable cause in the warrant application. Sullivan, 169 N.J. at 211 (citing State v. Valencia, 93 N.J. 126, 133 (1983)).

Applying these principles, we agree with Judge Bury's assessment that the issuing judge committed no error in finding probable cause. The conceded probable cause of CDS in the package, based on the package smelling of marijuana and the K-9's positive alert, extends to probable cause of criminal activity in defendant's residence when the totality of the circumstances are considered. Detective Gianotto testified the postal workers observed, within the year, forty-two similar packages addressed to defendant, who would arrive to retrieve them, with the odor of marijuana on his person. The detective further

testified that defendant's landlord continuously observed cars arriving from other states, and duffle bags would be exchanged with defendant; the landlord also observed defendant's receipt of a case of butane.

Defendant contends the landlord's claims were uncorroborated; however, it may be "assume[d] that an ordinary citizen" – as opposed to an anonymous informant – "reporting a crime, which the citizen purports to have observed, is providing reliable information." State v. Hathaway, 222 N.J. 453, 471 (2015) (quoting State v. Basil, 202 N.J. 570, 586 (2010)). The same can be said regarding the reliability of the postal workers' observations, which defendant also challenges on appeal. Defendant further contends the landlord did not observe criminal activity, nor did he observe anything that would establish probable cause. But when the landlord's observations are considered alongside the K-9 dog's positive alert of the package and the postal workers' claims of defendant's consistently suspicious conduct before them, a "fair probability" of criminal conduct occurring at the residence emerges. Defendant's suppression motion was properly denied.

To the extent not specifically addressed here, defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3493-17T1