**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2602-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ZAK A. MISSAK,

    Defendant-Respondent.

_____

Argued February 12, 2025 – Decided September 3, 2025

Before Judges Mayer, Rose, and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 23-10-0141.

Steven A. Yomtov, Deputy Attorney General, argued the cause for appellant (Matthew J. Platkin, Attorney General, attorney; Steven A. Yomtov and Layli Khelafa, Deputy Attorney General, of counsel and on the briefs).

Andrew Gimigliano argued the cause for respondent (Mandelbaum Barrett PC, attorneys; Andrew Gimigliano and Damian Conforti, of counsel; Andrew

Gimigliano and Stacey E. Zyriek Enriquez on the briefs).

Edward F. Ray, Assistant Prosecutor, argued the cause for amicus curiae County Prosecutor's Association of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; Edward F. Ray and William P. Miller, Assistant Prosecutor, of counsel and on the briefs).

Raymond Brown argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, PC, attorneys; CJ Griffin, of counsel and on the brief; Dillon J. McGuire, on the brief).

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for amicus curiae New Jersey Office of the Public Defender (Jennifer N. Sellitti, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

Dillon Reisman argued the cause for amici curiae American Civil Liberties Union & American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, Jennifer Stisa Granick (American Civil Liberties Union Foundation) of the California bar, and Nathan Freed Wessler (American Civil Liberties Union Foundation) of the New York and Massachusetts bars, admitted pro hac vice, attorneys; Dillon Reisman, Jeanne LoCicero, Jennifer Stisa Granick and Nathan Freed Wessler, on the brief).

PER CURIAM

In this appeal we consider for the second time the proper scope of a search warrant for the contents of a cellular phone seized from defendant Zak A. Missak

2

following his arrest for second-degree luring, N.J.S.A. 2C:13-6(a), and second-degree attempted sexual assault, N.J.S.A. 2C:14-2(c)(4) and N.J.S.A. 2C:5-1(a).[1] The State charged defendant with crimes it alleged took place over a two-day period during which defendant used his cellular phone to communicate with an undercover officer he believed to be a fourteen-year-old girl.  The court issued a search warrant permitting the State to search the entire contents of defendant's phone, including information and data created by applications the State does not allege defendant used to communicate with the officer.  In his ensuing motion to quash the warrant, defendant only acknowledged the State had probable cause to search for evidence generated during the two-day period by the applications the State alleged he used to communicate with the officer. The court subsequently denied defendant's motion to quash the warrant.

On leave to appeal, we found the State did not establish probable cause to search all the information and data on defendant's cellular phone.  State v. Missak, 476 N.J. Super. 302, 322 (App. Div. 2023).  We concluded the State produced no proof there was a fair probability information and data on the phone

_____

[1] On October 12, 2023, after issuance of the search warrant that is the subject of this appeal, a grand jury indicted defendant, charging him with those crimes, and third-degree attempted endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1).

A-2602-23

generated outside the two-day period or by applications the State did not allege defendant used to communicate with the officer would be evidence of the crimes for which defendant had been charged. Ibid. We remanded for entry of an order quashing the warrant, but noted the State could apply for a new warrant if it possessed sufficient proof to establish probable cause to search the entire contents of defendant's phone. Id. at 323.

On remand, the State applied for a second search warrant based on a new certification from the same officer who filed a certification in support of the first warrant. The court again issued a warrant permitting the State to search the entire contents of defendant's phone. When granting defendant's motion to quash the second warrant, the motion judge, who was not the issuing judge, concluded the State did not establish probable cause that evidence of the crimes for which defendant was charged would be found in information and data generated by his phone outside the two-day period or by applications he did not allegedly use to communicate with the officer. The motion court memorialized its decision in a March 5, 2024 order quashing the warrant. We granted the State's motion for leave to appeal and affirm.

A-2602-23

I.

The following facts are derived from the four corners of the certification submitted in support of the second warrant application. See State v. Marshall, 199 N.J. 602, 613 (2009) ("The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing [court]") (quoting Maryland v. Garrison, 480 U.S. 79, 85 (1987)).

> The State alleges that prior to his arrest, defendant used two online chatting applications to communicate with an individual he believed was a fourteen-year-old girl, solicited the child's agreement to meet him for a sexual encounter, and traveled to an agreed upon location to perform sex acts with her. The arrest occurred, and his cellular phone was seized, after defendant arrived at the location and discovered his online communications had been with United States Department of Homeland Security Special Agent Laura Hurley (Hurley).
>
> [Missak, 476 N.J. Super. at 307.]

Hurly's certification provided the sole support for an application for a warrant to search defendant's cellular phone. Id. at 308.

> According to Hurley, on the afternoon of December 8, 2021, she posed as a fourteen-year-old child on the mobile chat application, Skout. An individual displaying the name M.W., who the State claims is defendant, initiated a conversation with Hurley through Skout, stating, "Hey gorgeous I would love to be your sugar daddy and spoil you."

5

A-2602-23

[Id. at 308-09 (footnotes omitted).][2]

Hurley's certification further stated:

> Hurley provided a cellular phone number to M.W., and later that day received a text message from an unfamiliar phone number stating, "Hey gorgeous." When Hurley asked the sender to identify himself, the sender replied, "[M.]"
>
> M.W. then texted Hurley he was "trynna get [his] dick sucked wya," and Hurley texted M.W. she was fourteen years old. That afternoon, M.W. continued to send Hurley messages comprised of sexually explicit statements.
>
> On December 9, 2021, in the early evening hours, Hurley received unsolicited messages on another mobile chat application, Kik, from a user named "Kazeblack," who was later identified as defendant. Those messages stated, "Hey sexy," and "What's up beautiful it[']s [M.]" "Kazeblack" continued to send messages, including a "photograph of a shirtless male seen from his chest up" and a request for photographs of the juvenile.
>
> [Id. at 309 (footnote omitted) (third alteration added).][3]

---

[2] Skout is "a free social networking mobile application designed to assist people in meeting others from the same geographical location by sharing profiles and allowing the exchange of private messages between its users." Id. at 308 n.1. "We use the initials 'M.W.' instead of the false name defendant allegedly utilized to identify himself during the chat to avoid any confusion with any real-life individuals who have the same name." Id. at 309 n.2.

[3] Kik is "an instant messaging mobile application that allows registered users to chat privately and in groups, and exchange texts, pictures, and gifts." Id. at 309 n.3.

A-2602-23

According to Hurley's certification,

> later in the evening of December 9, 2021, "Kazeblack"/"[M.W.]" arrived at a Franklin Park location in a motor vehicle "in an attempt to meet up with the juvenile with whom he was chatting." The individual, who was identified as defendant, was arrested . . . . During a search incident to defendant's arrest, the officers seized a cellular phone in defendant's possession. The officers secured the phone pending the approval of a search warrant.
>
> [Id. at 309-10.]

Hurley's "certification . . . detailed her extensive law enforcement background and experience." Id. at 308. In addition,

> Hurley's certification asserted that based on knowledge she obtained during her participation in an "undercover chat investigation," she had "probable cause to believe" the cellular phone seized from defendant following his arrest "contain[ed] evidence of" two "[s]pecified [c]rimes" – luring and attempted sexual assault – allegedly committed on December 8 and 9, 2021.
>
>     . . . .
>
>     . . . Hurley further represented that based on her training and experience, proving who used, controlled, or accessed an electronic device, and who entered, controlled, or saw data on it, is generally important to an investigation and "requires examination of data that, on its face, might be innocent, such as registry information and files accessed around that time." Based on that assertion, and the other facts set forth in the certification, Hurley stated a "forensic examiner

7

must be allowed to access and examine <u>ALL</u> of the data on a computer, electronic device, or storage media."

Hurley also stated that computer storage devices, including mobile devices, generally store the equivalent of thousands of pages of information. Hurley averred that "a suspect may try to conceal criminal evidence" and "might store it in random order with deceptive file names." Hurley asserted that, for those reasons, the search may require an examination of "all the stored data to determine which particular files are evidence or instruments of crimes."

[<u>Id.</u> at 308-10.]

"Hurley requested the warrant authorize the State to 'access, search, forensically examine, and document all information contained within' [the cellular phone] for evidence relating to offenses involving the exploitation of children[,]' specifically involving the crimes of luring and attempted sexual assault defendant allegedly committed on December 8 and 9, 2021." <u>Id.</u> at 310.

More particularly, Hurley sought a warrant authorizing a search of the phone's

stored electronic data, encrypted or password protected files/data, the assigned cellular number, cellular billing number, address book/contact(s) information, all recent calls, to include dialed, received, missed, erased calls, duration of said calls, any Internet access information, incoming and outgoing text messages, text message content, any stored pictures, stored video, calendar information, Global Positioning

System (GPS) data, memory or Secure Digital Memory cards (SD cards) and any other stored information on said mobile device that will assist in the continuation of this investigation.

[Id. at 310-11.]

"The court granted the State's search warrant application[,]" after finding "Hurley's certification established probable cause to believe the cellular phone 'will yield evidence of the crimes of' luring and attempted sexual assault." Id. at 311. "The warrant authorized the State to 'examine' the cellular phone 'with necessary and proper assistance.'" Ibid.

The State moved for an order compelling defendant to provide the phone's passcode to allow the search of the device authorized by the warrant. Defendant filed a cross-motion to quash the search warrant based on claims: the search warrant constituted an unconstitutional general warrant that was not supported by probable cause; and the warrant did not set forth the places to be searched with constitutionally required particularity. Defendant also argued the State's motion to compel disclosure of the passcode should be denied because the search warrant was invalid.

After hearing argument, the motion court rendered a written decision finding Hurley's certification established probable cause for a search of all of the phone's contents and data . . . . The court further determined the warrant was sufficiently particular because it authorized a search of the phone's

A-2602-23

> contents and data, and Hurley's certification supported that broad search.
>
> [Ibid.]

The court also granted the State's motion to compel production of the passcode under State v. Andrews, 243 N.J. 447, 480-81 (2020). The court entered an order memorializing its decision. Missak, 476 N.J. Super. at 312.

On leave to appeal, defendant argued the search warrant was invalid because Hurley's certification did not establish probable cause to search the phone's entire contents, information, and data.[4] Id. at 317. He argued Hurley's certification established probable cause only with respect to the crimes of luring and attempted sexual assault committed on December 8 and 9, 2021, and the warrant, therefore, should be limited to a search for evidence related to those crimes and dates and the applications allegedly used in furtherance of those crimes. See id. at 318. He further argued the warrant was not "supported by any facts establishing a reason to believe all the phone's various contents, information, and data may include evidence of the crimes for which the warrant was sought and he [was] charged." Ibid.

We noted that

---

[4] Defendant did not seek leave to appeal from the court's order compelling production of the passcode to the phone.

[t]he State's, defendant's, and amici's briefs on appeal highlight[ed] the extensive and voluminous information that is stored on a cellular phone. They also offer[ed] various and conflicting contentions concerning the way in which information may be saved, stored, manipulated, and maintained on electronic devices, including cellular phones. Their conflicting contentions concerning issues related to electronic data stored on personal devices raise important and challenging issues for law enforcement, the citizenry, and the courts during criminal investigations and prosecutions, especially in the application of the state and federal constitutional protections against unreasonable searches and seizures.

[Ibid.]

We continued:

Discerning where evidence of a crime may be found on a cellular phone is a function of complex technology that changes frequently. Hurley's certification suggests the complexity of a cellular phone's technology – she generally asserts that reaping pertinent evidence from a cellular phone requires expert foraging at laboratories using complex computer applications and equipment. Similarly, amici submit numerous articles and literature pointing to the complexity of the digital landscape presented by data contained in cellular phones, the manner in which such data may be searched and retrieved, and the constitutional issues presented by law enforcement's efforts to traverse the landscape in search of evidence.

[Id. at 319.]

We concluded that "[a]lthough changing technology presents endless challenges for the application of our constitutional principles" to a search of a cellular phone, "[w]e need only consider the four corners of Hurley's certification and apply fundamental tenants of constitutional law" to determine the validity of the warrant. Ibid. We noted Hurley's certification expressly sought a search warrant only for evidence pertaining to the two crimes defendant was alleged to have committed on December 8 and 9, 2021. Id. at 320. In addition, we observed "defendant [did] not dispute Hurley's certification established probable cause permitting a search of the phone's contents and data limited to the text communications between defendant and Hurley" on December 8 and 9, 2021, through the two applications noted in the certification and "any alleged phone communications between defendant and Hurley on those two days." Ibid. Yet, the warrant "authorize[d] a search of everything else on the phone in the absence of any facts in Hurley's certification supporting probable cause findings defendant committed any crimes prior to December 8, 2021, or the phone's other information and data will contain evidence of any crime, including the charged crimes." Ibid.

We rejected Hurley's purported justification to search the phone's entire contents because defendant may have altered files on the phone to disguise what

12

they contain and thereby avoid the State's recovery of information and data for which probable cause was established. Id. at 320-21. We concluded that "[t]he justification falls short of the constitutional mark . . . because establishing probable cause for a search requires more than a showing of what 'may' have occurred." Id. at 321.

We also rejected the argument that a search of the phone's entire contents was necessary "to demonstrate defendant possessed and used the phone 'around the time' the phone was employed in the commission of the alleged crimes." Ibid. We found

> [w]hat is missing from Hurley's certification are any facts establishing probable cause for an examination of data and other information, whatever it might be, that either predates defendant's alleged commission of the crimes or does not constitute evidence of his use of the phone 'around the time' the crimes were committed.
>
> [Id. at 321-22.]

We therefore found "[t]he search warrant clearly permits a search for data and information in various forms on the cellular phone for which the State failed to establish probable cause to believe may contain evidence of the crimes for which defendant has been charged and for which the search warrant was sought." Id. at 322. For those reasons, we reversed the motion court's order and quashed the search warrant. Ibid. We concluded:

The State is free to seek a new search warrant based on whatever facts are available to it that establish probable cause to believe the various information and data the State requests to search contain evidence pertaining to the criminal charges pending against defendant.

Given the complexity of the technology concerning a cellular phone's data and information, and law enforcement's ability to cull through the information and data, any future search warrant application should address such issues to allow the court to determine the locations within the data and information on the cellular phone there is probable cause to believe relevant information concerning the crimes charged may be found. That information will assist the court in determining with particularity the locations within the data and information on the cellular phone for which there is probable cause to search.

[Id. at 323.]

On remand, the State again applied for a warrant to search the entire contents of defendant's cellular phone. The State again relied on a certification by Hurley and sought evidence for the same two crimes. Hurley recounted the factual allegations about the electronic communications she had with "M.W."/Kazeblack on December 8 and 9, 2021, and defendant's appearance at the prearranged meeting place.

The only material difference between Hurley's first and second certifications was the addition of hypotheticals about how information and data

on a cellular phone might be stored and manipulated. The additional hypotheticals in the certification stated:

> [(1)] . . . [D]ata that represents an email or message may not be stored contiguously but, instead, may be split into chunks and disbursed widely through the storage medium. Moreover, the system itself may change that positioning over time with or without the knowledge of the user of the device[;]
>
> [(2)] Data stored on such devices may be intentionally concealed by the device's owner. For instance, data that would normally be interpreted by the device as an image file may be altered by the user to appear as though it is a different type of data[;]
>
> [(3)] Data may be deleted by the user, but may still exist on the device . . . . [;]
>
> [(4)] Relevant data may need other data to be interpreted. For example, data that describes the files and structure of a filesystem are generally stored separately from the data that makes up the files themselves. Thus, understanding that certain data is a file, knowing its filename, and learning when it was created requires accessing data that is not in the file itself. . . . [D]ata stored by an app [(sic)] may be stored in a proprietary format understandable only by that app. . . . In such a case, an examiner may need to recover both the application data and the program data to examine the content of the application data[;]
>
> [(5)] Date and time information is often application specific and may not allow a straightforward assessment of time. For example, a messaging application may or may not store date and time

15

information associated with each of the messages it stores[;]

[(6)] Data may not be capable of separation from other data. For instance, a messaging application may store all of its messages in a proprietary database that it maintains on the device. In such a case, it may not be possible to extract only a portion of the database and attempting to do so is likely to yield unreadable corrupted data[;]

. . . .

[(7)] The way certain data appears on its face may not be accurate. For instance, users of computing devices may seek to hide contraband by altering the device to exhibit unexpected behavior. For example, a device may not report all of the files that are stored on it or may misreport their types, allowing the user to conceal data.

In addition, Hurley certified that examination of the phone's entire contents was necessary to establish defendant's control of the device. For example, photographs on defendant's phone of him and his family taken over a long period may establish his control of the device. Hurley also certified that to ensure data extraction is executed properly, all data on the phone must first be extracted. In other words, Hurley claimed it was impossible to conduct an extraction from the phone that is limited to select applications. Finally, in her certification, Hurley stated a search of the full contents of the phone may reveal

16

evidence of defendant's mental state or evidence that will negate potential defenses. Hurley did not elaborate on that point.

On September 12, 2023, another judge issued a warrant to search the entire contents of defendant's cellular phone without limitations.

The State subsequently filed a motion in aid of litigant's rights to enforce the order compelling defendant to produce the passcode to the phone to permit the State to conduct the search authorized by the second warrant. Defendant cross-moved to quash the second warrant and to stay the passcode disclosure order.

On March 5, 2024, the same judge who quashed the first warrant issued a written decision denying the State's motion and granting defendant's cross-motion. The court found:

> The new information supplied in Hurley's second certification falls short of reaching probable cause to justify a search of the full contents of the [d]efendant's phone. . . . The State has not . . . provided information to allow the court to find that "there is probable cause to believe relevant information concerning the crimes charged may be found" in places on the phone "that either predate[] defendant's alleged commission of the crimes" or relates to his use of the phone after the crimes were committed to justify the full search the State is seeking.

17

The motion court continued, "[t]he certification has failed to identify any precise data for which probable cause has been established. Instead, the State continues to seek to search the full contents of the phone for data that it may find." The court found that it "must rely on the facts set forth in the certification, not on its own theories and guesses as to what information is being sought and where it is expected to be found."

The court rejected each of the reasons proffered by Hurley for a search of the entire contents of defendant's phone. With respect to her claim the phone may contain evidence relating to defendant's mental state, the court found Hurley "fail[ed] to identify any precise data or information that will reveal evidence of [d]efendant's intent." Instead, "[i]ntent is only briefly mentioned in one sentence of the certification[,]" providing "scant information" that does not identify where such evidence would be expected to be found and how it would be relevant to the charged crimes.

The court also found unpersuasive Hurley's "hypothetical scenarios" that defendant may have manipulated, hidden, or deleted evidence on his phone after he communicated with the officer but prior to his arrest. The court concluded

> [w]ithout a basis for the suspicion that this [d]efendant concealed or destroyed evidence, the State lacks probable cause to justify a full search of the phone on this basis at this time. In this case, the [d]efendant's

18

phone was seized on the day of his arrest and has been in the State's possession since that date. While it is possible that data was manipulated or deleted prior to the [d]efendant's arrest, without any facts to support this suspicion or belief, the State falls short of demonstrating probable cause to search the entire phone to see if the [d]efendant may have done so.

The court found Hurley's assertion that a search of the photographs on defendant's phone may uncover evidence of his control of the device "bolsters probable cause to search the entire phone." However, the court determined the argument "still falls short because the State has not shown that the massive amount of other data that would be accessed in a full search is connected in any way to the alleged criminality."

The court also found the hypothetical language in Hurley's certification regarding the nature and complexity of data storage on a cellular phone was insufficient to establish probable cause to search the entire contents of defendant's phone. The court concluded

[i]t is not always reasonable for law enforcement to seek full access to a defendant's phone, simply because evidence could possibly be found anywhere. Without any showing that the State has probable cause to search outside the specific applications used by the [d]efendant to commit the charged crimes or outside of the relevant time period when the crimes were alleged to be committed, the court finds that a search to find evidence anywhere is not reasonable in this case.

19

The motion court found that

> [t]he State has not provided enough information regarding what it seeks to find, outside of the applications that the [d]efendant employed to communicate with [Hurley], that would constitute evidence of the charged crimes. The court has concerns that the [s]econd [w]arrant is not reasonably designed to uncover evidence of the charged crimes, but rather to uncover evidence of other criminality that has not been charged or identified within the [s]econd [w]arrant. To permit the State to search the full contents of a defendant's phone solely on the basis that evidence <u>could be</u> discovered anywhere in the phone, or evidence <u>could be</u> hidden or deleted would have the effect of nullifying the protections guaranteed by the Fourth Amendment and the New Jersey Constitution.
>
> . . . .
>
> Like the [f]irst [w]arrant, the State has failed to provide facts to show sufficient probable cause to search the phone outside of the applications known to have been used in the commission of the crimes or outside of the relevant time period to support the [s]econd [w]arrant.

A March 5, 2024 order memorialized the court's decision. The court also stayed the order compelling defendant to provide the passcode for his phone.

We subsequently granted the State's motion for leave to appeal. The State raises the following arguments.

POINT I

THE JUDGE ERRONEOUSLY QUASHED THE
SEARCH WARRANT FOR DEFENDANT'S CELL
PHONE BASED ON A MISAPPLICATION OF LAW
GOVERNING PROBABLE CAUSE AND
PARTICULARITY, AND THIS COURT'S PRIOR
OPINION IN MISSAK.

A. The State's revised certification as per Missak.

B. The court's ruling is contrary to the current state of
technology, standard forensic protocols, and case law
addressing cell-phone searches.

C. The revised certification supported a search warrant
allowing full examination of defendant's cell phone.

We granted leave to appear as amici curiae to the County Prosecutor's
Association of New Jersey (CPANJ), the New Jersey Office of the Public
Defender (OPD), the Association of Criminal Defense Lawyers – New Jersey
(ACDL-NJ), the American Civil Liberties Union (ACLU), and the American
Civil Liberties Union of New Jersey (ACLUNJ).

II.

Both the Fourth Amendment of the United States Constitution and Article
I, Paragraph 7 of the New Jersey Constitution "protect individuals' rights 'to be
secure in their persons, houses, papers, and effects . . . .'" Andrews, 243 N.J. at
464. Under both constitutions "no warrant shall issue except upon probable

21

A-2602-23

cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." Marshall, 199 N.J. at 610 (quoting N.J. Const. art. 1, ¶ 7). "The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" State v. Boone, 232 N.J. 417, 426 (2017) (emphasis omitted) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). The same standard applies to a search warrant to obtain information from a cellular phone. Andrews, 243 N.J. at 465-66.

Probable cause is "consistently characterized . . . as a common-sense, practical standard for determining the validity of a search warrant." State v. Novembrino, 105 N.J. 95, 120 (1987). "Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). Courts must base a probable cause determination on the totality of the circumstances and consider the probabilities. Jones, 179 N.J. at 389 (citing Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

A-2602-23

A search warrant is presumed valid. State v. Bivins, 226 N.J. 1, 11 (2016). A defendant challenging the validity of a search warrant bears the burden of proving "there was no probable cause supporting the issuance of the warrant." Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)).

"[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389). However, "[c]ourts . . . should sustain the validity of a search only if the finding of probable cause relies on adequate facts." Boone, 232 N.J. at 427 (quoting Jones, 179 N.J. at 388-89). This is because "the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe it may be found.'" Marshall, 199 N.J. at 611 (quoting Garrison, 480 U.S. at 84). We will reverse an order authorizing a search warrant that is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

A-2602-23

The State argues the motion court misinterpreted the Hurley certification, which it contends established that "[a]lthough cell phones rely on algorithms and other complex processes to store data, where the data is ultimately stored on the phone depends on not only the user, but also on the type of operating system." Thus, the State argues, Hurley's certification established probable cause that "data relevant to the criminal investigation" of the charges against defendant "could, in fact, be located anywhere on [his] cell phone." The State likens the search of a cellular phone to the search of an entire house for something that can be placed or secreted anywhere in the home. The State argues that the "location" of the search, i.e., the place to be searched, is the phone itself, and the items to be seized are the information and data contained in digital files possibly anywhere on the phone. Thus, the State argues, it makes no sense to limit a search within the place to be searched, given that the information and data that is the subject of the search can be stored anywhere on the phone.

In addition, the State argues the Hurley certification established that data on a cellular phone "may not always correlate to a specific date range or type of file," establishing probable cause to search the entire contents of defendant's cellular phone. The State argues "limiting a forensic examination of a cell phone

24

to certain applications and time frame[s] . . . is not just impracticable in this case, but in all cases where a digital examination of a cell phone is sought."

CPANJ supports the State's position and argues the motion court failed to give sufficient deference to the factual findings of the court that issued the warrant, which were based on Hurley's expertise. In addition, CPANJ argues a decision requiring law enforcement agencies to apply for multiple piecemeal search warrants of digital devices would strain the State's and the judiciary's limited resources.

Defendant argues that the revised Hurley certification did not cure the defects that led this court to conclude the State failed to establish probable cause to search the entire contents of his cellular phone. This is so, defendant argues, because in support of its request to conduct an unlimited search of the phone, the State relies on hypotheticals relating to the storage, manipulation, and deletion of information and data on cellular phones in general. According to defendant, Hurley identified no facts establishing a fair probability evidence relating to the two crimes identified in the warrant would be found on his phone outside the information and data generated during the two-day period he is alleged to have committed those crimes or by applications the State does not allege he used to commit those crimes. Defendant argues, "[t]he State's

A-2602-23

assumption it will not be able to retrieve all the evidence it seeks from the [p]hone unless it can conduct a full forensic examination of the [p]hone does not establish probable cause."

Defendant characterizes as a red herring the State's argument that examination of the entire phone is necessary to establish defendant's control of the phone. He notes the phone was seized from defendant at the time of his arrest and the State has secured an order compelling him to reveal the passcode for the phone. Defendant argues that if the State accesses the phone using the passcode he provides, his control of the phone will be demonstrated. Defendant also offers to stipulate he is the owner of the phone.

Defendant argues the Hurley certification primarily focuses on the ease with which a user may manipulate files on a desktop or laptop computer. He posits, without evidentiary support in the record, that files on a cellular phone are not as susceptible to data manipulation as those devices.

Finally, defendant argues the State has not made a showing limitations on its search of defendant's phone will impede its ability to search for evidence of the crimes for which he was charged. Defendant notes the State, which is in possession of all of defendant's communications with Hurley, has not sought a warrant with a more limited scope. He argues that "[i]f the State is unable to

26

obtain evidence after conducting a particularly narrow search, then the State can apply for a broader warrant based on the facts at that time."

OPD supports defendant's position and urges us to issue guidelines to ensure cellular phone searches are authorized in conformance with constitutional safeguard and direct the Attorney General to issue cellular phone search protocols. ACDL-NJ also supports defendant's position. In addition, it argues cellular phones should be afforded a heightened expectation of privacy under the State Constitution. ACLU and ACLUNJ support defendant's position and highlight the vast amount of private and sensitive data stored on cellular phones.

We have reviewed the record, as well as the arguments of the parties and amici, and agree with the motion court's conclusion the State failed to establish probable cause to search the entire contents of defendant's cellular phone. Hurley's second certification did not cure the deficiencies we found were sufficient to invalidate the first warrant. Missak, 476 N.J. Super. at 317-23. Hurley identified no facts establishing a fair probability evidence of the two crimes for which defendant was charged would be found in information and data on his cellular phone generated outside the two-day period the State alleges he engaged in criminal activity. Nor did Hurley identify facts establishing a fair

27

probability such evidence would be found on defendant's cellular phone in information and data generated by applications the State does not allege defendant used in the commission of his crimes.

We have no reason to doubt Hurley's claims information and data on electronic devices can be manipulated and deleted by users to avoid detection of criminal activity. However, Hurley identified no facts establishing defendant engaged in such manipulation or deletion of data or that the type of cellular phone seized from defendant is susceptible to such manipulation. The mere speculation that defendant may have altered information and data on his phone is insufficient to establish probable cause to search the entire contents of the phone.

In addition, the circumstances of this case militate in favor of limitations on the search of defendant's phone. The time period during which the State alleges defendant engaged in criminal activity is short. The State is in possession of all the communications and the photograph Hurley received from defendant's phone in connection with the alleged crimes. The State seized defendant's phone when he arrived at the preestablished meeting point, negating any opportunity for him to alter data on the phone post-arrest. As the motion court observed, the search of defendant's phone is, in effect, necessary to

confirm his connection to evidence already in the State's possession. The State identified no facts establishing probable cause defendant engaged in criminal activity outside the two-day period or with applications other than those used to communicate with Hurley. Absent probable cause to the contrary, a search of the information and data on defendant's phone outside those limited confines would effectively be a search for uncharged criminality not identified in the search warrant. For those reasons, we affirm the March 5, 2024 order.

We offer no opinion with respect to the scope of an appropriate search warrant in this matter, should the State elect to make a third application to search defendant's cellular phone. Nor do we offer a view on defendant's suggestion that if the State were to obtain a more limited search warrant and discover evidence of data tampering or be unable to retrieve information and data from defendant's phone the State could file an application for a broader warrant. We leave to the trial court the determination in the first instance of whether such an approach is workable and constitutionally sound.

We decline amici's suggestion that we expand the scope of constitutional protection for cellular phones and direct the Attorney General to issue cellular phone search protocols. Having found the State did not establish probable cause

A-2602-23

to search the entire contents of defendant's phone, we need not consider whether such broad relief is warranted.

Affirmed. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division