# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0125-25

STATE OF NEW JERSEY
IN THE INTEREST OF
J.P.-P., a juvenile.

_____

Submitted March 17, 2026 – Decided June 15, 2026

Before Judges Rose and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FJ-09-0649-25.

Hugo Villalobos, attorney for appellant.

Wayne Mello, Hudson County Prosecutor, attorney for respondent (Colleen Kristan Signorelli, Assistant Prosecutor, on the brief).

PER CURIAM

On leave granted, J.P.-P., a juvenile, appeals from the September 4, 2025 Family Part order denying his motion to quash a communications data warrant (CDW) authorizing a search of the contents of a cellphone and granting the State's motion to compel him to produce the password to that device. Although

we affirm the order to the extent it upholds the timeframe of the permitted search, we vacate the remainder of the order and remand for further proceedings.

I.

On June 17, 2025, the State charged J.P.-P. with conduct that, if committed by an adult, would constitute: (1) fourth-degree unlawful disposition of a weapon, N.J.S.A. 2C:39-9(d); and (2) fourth-degree conspiracy to commit unlawful disposition of a weapon, N.J.S.A. 2C:5-2(a) and :39-9(d).

On June 24, 2025, Kearny Police Department (KPD) Detective Alan Stickno applied for a CDW to search a cellphone retrieved, when J.P.-P. was arrested, "for any and all stored electronic data from the date range of 04/01/2025 through 06/17/2025." In an affidavit, Stickno stated he had probable cause to believe the search would reveal evidence of criminal activity, including transporting a firearm into the State for an unlawful sale, N.J.S.A. 2C:39-9(i), unlawful disposition of a weapon, N.J.S.A. 2C:39-9(d), illegal transportation and sale of high capacity magazines, N.J.S.A. 2C:39-9(h), unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and conspiracy, N.J.S.A. 2C:5-2.

Stickno's affidavit set forth the following facts. See State v. Marshall, 199 N.J. 602, 613 (2009) ("The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to

2

disclose, to the issuing" court) (quoting <u>Maryland v. Garrison</u>, 480 U.S. 79, 85 (1987)).

On June 16, 2025, KPD received a call from B.S.-M., the mother of Y.C., a juvenile. She stated she found a handgun and two loaded magazines in a cut-out portion of Y.C.'s bedding in his bedroom. KPD officers responded to the residence. B.S.-M. granted the officers access to the home and led them to the contraband. They took possession of an H&K P30 9mm handgun and two 9mm magazines, each with a fifteen-round capacity. The magazines contained twenty-two full metal jacket 9mm rounds and one hollow point 9mm round. Y.C. was not home when the officers took possession of the contraband.

Later that evening, B.S.-M. arrived at KPD headquarters with Y.C. After he was advised of his <u>Miranda</u>[1] rights, Y.C. made a statement to the officers. He said on an unspecified date, J.P.-P. told him he had a contact in the Bronx, New York, who would be willing to sell a firearm to Y.C. Y.C. later told J.P.-P. he wanted to buy a firearm from the contact. J.P.-P. facilitated the sale. Through the cellphone application WhatsApp, J.P.-P. sent Y.C. a video the contact had sent J.P.-P. depicting the inventory of firearms he was offering for sale. Using WhatsApp, Y.C. advised J.P.-P. he wanted to purchase a specific handgun from

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-0125-25

the seller. J.P.-P. used WhatsApp to inform Y.C. the handgun would cost $1,700. Y.C. used the same application to advise J.P.-P. he agreed to make the purchase for that amount.

J.P.-P. assisted Y.C. to negotiate the circumstances of the sale. Originally, the transaction was to take place in the Bronx. However, Y.C. was uncomfortable traveling there. The seller agreed to have the transaction take place near a Kearny convenience store.

Y.C. was not present for the transaction. He arranged for his friend, A.O., also a juvenile, to assist J.P.-P. with the sale. Y.C. transferred $1,700 to A.O. through the cellphone application Zelle to purchase the handgun. Y.C. also used the Uber cellphone application to arrange and pay for the seller to travel from the Bronx to Kearny. J.P.-P. and A.O. met the seller in Kearny and purchased the handgun, two magazines, and ammunition for $1,700.

After the sale, J.P.-P. and A.O. returned to A.O.'s residence with the contraband. Several hours later, Y.C. used the Uber cellphone application to obtain and pay for transportation to A.O.'s residence, where A.O. handed him the contraband through a window. Y.C. did not recall the exact date of the sale, but said it happened about three weeks before the interview, in May 2025.

A-0125-25

On June 17, 2025, KPD officers arrested J.P.-P. at his school. According to Stickno, a cellphone was retrieved from J.P.-P. at the time of his arrest.

Stickno stated he believed the cellphone contained evidence that would connect the actors to their involvement in the illegal transaction and lead to the identity of the seller. He stated his belief was based on Y.C.'s admissions: (1) he used his cellphone to initiate, negotiate, and organize the transaction by communicating with J.P.-P. through both WhatsApp and standard text messaging; (2) J.P.-P. was the point of contact with the seller and communicated with Y.C. through WhatsApp and standard text messages about the transaction using his cellphone; and (3) J.P.-P. received and transmitted video or photographic images depicting firearms offered for sale by the seller through WhatsApp.[2]

Stickno stated that because the exact date of the purchase of the contraband is unknown, it would be reasonable to search the cellphone

---

[2] In the same affidavit, Stickno sought a CDW for Y.C.'s cellphone. In addition to the three justifications noted above, Stickno stated his belief Y.C.'s cellphone would contain evidence of criminal activity because Y.C. admitted he used: (1) the Uber application to arrange and pay for the seller's transportation from the Bronx to Kearny to effectuate the transaction; and (2) the Zelle application to transfer $1,700 to A.O. to purchase the contraband. The CDW issued for Y.C.'s cellphone is not before this court. The State produced no evidence J.P.-P. used Uber or Zelle on his cellphone in connection with the transaction.

A-0125-25

recovered at J.P.-P.'s arrest for evidence relating to the period April 1, 2025, through June 17, 2025, to ensure all evidence of the transaction, including Y.C.'s initial expression to J.P.-P. of his interest in purchasing a firearm, would be captured. Stickno also requested the court authorize access to obtain property, records, files, or data that have been hidden, erased, compressed, password protected, or encrypted and to obtain the PIN and unlock codes necessary to search the cellphone.

Stickno's affidavit did not address how data is stored on a cellphone or the manner in which a cellphone is searched for evidence. Nor did he explain why he sought a warrant to search the entire contents of the cellphone during the specified date range, as opposed to searching the data relating to the specific applications he believed J.P.-P. used to communicate with Y.C. and the seller.

On June 24, 2025, the court issued a CDW permitting the State to search the cellphone "for any and all stored and observable data, including but not limited to all electronically stored data, videos, photographs, and electronic communications (text messages, emails, instant messages) which connects the suspect and/or victim and/or witness to each other, the criminal activity and/or the crime scene of the" crimes listed in Stickno's affidavit for the period April 1, 2025, to June 17, 2025. The CDW also permitted a search of any records,

files, or data on the cellphone that have been hidden, erased, compressed, password protected or encrypted, as well as obtaining PINs, or unlock codes to access that data.

On July 10, 2025, the State filed a motion pursuant to State v. Andrews, 243 N.J. 447 (2020), seeking an order compelling J.P.-P. to disclose the passcode to unlock the cellphone. J.P.-P. opposed the motion, arguing the cellphone recovered at his arrest was not recovered from his person, and the State did not have probable cause to establish the cellphone belonged to him. In addition, J.P.-P. cross-moved to quash the CDW, arguing if the State established the cellphone belonged to him, the warrant was not supported by probable cause and was overly broad. J.P.-P. argued: (1) the time period approved by the court was too broad because Y.C. told detectives during his June 16, 2025 interview the sale took place about three weeks earlier; (2) Stickno's affidavit was insufficient to establish probable cause because it was based only on the detective's beliefs J.P.-P.'s cellphone would contain evidence of criminal activity; and (3) the CDW was too broad because it was not limited to data associated with WhatsApp and standard text messaging, the only two applications the State had evidence J.P.-P. used in connection with the illegal transaction.

7

On September 4, 2025, the court held oral argument on the motions. The record is ambiguous with respect to what evidence was submitted to the court in support of the motions. During oral argument, J.P.-P.'s counsel stated a video recording of Y.C.'s statement to police was "the one video we were . . . provided with . . . ." Counsel describes that video as being "from three angles" and "[f]ound in Camera 1, 2 or 3." The parties did not mark a specific recording as an exhibit, and there is no indication in the record the court admitted a recording as evidence. However, it appears the court reviewed a recording of Y.C.'s statement. In response to J.P.-P.'s suggestion it "would be good to review" the recording "because that is the evidence that they're using," the court replied, "I beg your pardon, sir. I did review it . . . ."

In response to a directive from this court to provide a copy of the police interview video described in his brief, J.P.-P. submitted a recording of Y.C.'s interview with police. That recording, however, is not "from three angles" and appears to have been recorded by a single camera, not three. There is no evidence in the record authenticating the recording and in light of the motion court's failure to address the admissibility of the recording or note its entry into evidence, it is not part of the record on appeal. However, because the State did not object to the recording submitted to this court by J.P.-P.'s counsel, we

8

proceed on the assumption the recording is the same evidence considered by the motion court.[3]

It is, however, clear the court did not review the recordings from the body worn cameras of the officers who arrested J.P.-P. When discussing J.P.-P.'s argument the officers did not obtain the cellphone from his possession during his arrest, his counsel stated, "And I went back to the video, and its true. That was not found on him during the search warrant [(sic)], all right?" He continued, "[W]hen they search him, I see it. They take everything out of his pocket in the video, and its not there." Later, J.P.-P.'s counsel stated, "The video provided in discovery . . . clearly showed when he was arrested, and he did not have a phone in his possession."[4] The court subsequently stated, "I've obviously not seen the

---

[3]  We note J.P.-P.'s appendix contains what are described as pages "85 of 94" and "86 of 94" of what appears to be an English-language translation of Y.C.'s police interview. The interview was conducted in Spanish by a bilingual officer who provided English language translations of Y.C.'s statement to Stickno. There is no indication in the record the motion court considered a written translation of the interview. In addition, the incomplete copy of the interview in J.P.-P.'s appendix does not state who wrote the translation, the qualifications of the translator, the date of its preparation, or any indicia of its reliability. The partial written translation, therefore, is not part of the record and was not considered by this court.

[4]  Although J.P.-P.'s counsel previously stated the recording of Y.C.'s statement to police "was the one video" provided by the State, it appears the State also produced the body worn camera recordings capturing J.P.-P.'s arrest.

A-0125-25

video. Does the video capture the entire arrest, and search and seizure of any items belonging to the youth?"

At the conclusion of arguments, the motion court issued an oral decision granting the State's motion and denying J.P.-P.'s cross-motion. With respect to the motion to quash, the court found the State established probable cause the cellphone was in J.P.-P.'s possession when he was arrested and would contain evidence of the crimes listed in Stickno's affidavit based on Y.C.'s statement to police. The court noted Y.C. told detectives he and J.P.-P. used WhatsApp to exchange messages and a video relating to Y.C.'s purchase of the handgun. In addition, the motion court found the timeframe approved in the CDW, which was based on Stickno's training and experience, and the fact Y.C.'s communications with J.P.-P. regarding the illegal transaction by necessity preceded the sale, was reasonable. The motion court also found J.P.-P. produced no evidence the cellphone was not in his actual or constructive possession at the time of his arrest or did not belong to him. The court did not address J.P.-P.'s argument regarding the search of the cellphone for data associated with applications other than WhatsApp and standard text messaging.

With respect to the motion to compel the production of the cellphone's password, the motion court found each of the three elements set forth in

10

Andrews was satisfied. First, the court found the State established the cellphone could not be accessed without a password. See id. at 480. This finding was based on a representation by the assistant prosecutor that after the court issued the CDW, the State attempted to access J.P.-P.'s cellphone, but was unable to do so because it was password protected.

Second, the court found the cellphone was in J.P.-P.'s actual or constructive possession when he was arrested. See ibid. The court, without having viewed the body worn camera recordings of J.P.-P.'s arrest, and despite defense counsel's representation the recordings unequivocally show the cellphone was not obtained from J.P.-P.'s person, found, "I have to accept the representation of the sworn officer who indicated that they retrieved the phone from the possession of the youth."[5] Although the body worn camera recordings were not admitted as evidence by the motion court, they were submitted to this court by J.P.-P. The recordings are not part of the record before this court.

Third, the court concluded J.P.-P.'s possession of the cellphone when he was arrested was sufficient to establish he owned and operated the device. See

---

[5] The motion court rejected defense counsel's repeated urging to view the body worn camera recordings of J.P.-P.'s arrest. The court stated "the video [(sic)] is not evidence . . . to the contrary. The video is simply evidence that this youth was arrested. It does not mean that it captured all of it. It does not mean that I can see everything that occurred."

A-0125-25

id. at 480-81. Thus, the court found compelling J.P.-P. to disclose the password was warranted and would not violate the Fifth Amendment. The court thereafter denied J.P.-P.'s motion for a stay.

A September 4, 2025 order memorialized the court's decisions. The court ordered J.P.-P. to disclose the password on September 9, 2025.

We granted J.P.-P.'s motion for leave to appeal, and stayed the September 4, 2025 order until further order. J.P.-P. raises the following arguments.

POINT I

THE COURT ABUSED ITS DISCRETION IN FAILING TO QUASH THE SEARCH WARRANT THAT WAS INVALID DUE TO LACK OF PROBABLE CAUSE FOR ITS BROAD SCOPE.

POINT II

THE COURT ABUSED ITS DISCRETION IN EXTENDING THE FOREGONE CONCLUSION DOCTRINE IN VIOLATION OF APPELLANT'S FIFTH AMENDMENT RIGHTS WITHOUT PROOF THAT THE APPELLANT WAS THE OWNER AND "EXERCISED POSSESSION, CUSTODY OR CONTROL" OVER THE PHONE.

POINT III

THE COURT ERRED IN FAILING TO SWEAR IN [J.P.-P.] TO ESTABLISH THAT NO POLICE OFFICER TOOK THE PHONE FROM HIM AT THE ARREST, AND IN FAILING TO CONSIDER VIDEO EVIDENCE WHEN THE JUVENILE Y.C.

12

DESCRIBED THE NARROW TIME FRAME WITHIN WHICH THE CRIME WAS COMMITTED.

## II.

A.    The Search Warrant.

Both the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution "protect individuals' rights 'to be secure in their persons, houses, papers, and effects . . . .'" Id. at 464.  Under both constitutions "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." Marshall, 199 N.J. at 610 (quoting N.J. Const. art. I, ¶ 7).  "The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" State v. Boone, 232 N.J. 417, 426 (2017) (emphasis omitted) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). The same standard applies to a search warrant to obtain information from a cellular phone. Andrews, 243 N.J. at 465-66.

Probable cause is "consistently characterized . . . as a common-sense, practical standard for determining the validity of a search warrant." State v. Novembrino, 105 N.J. 95, 120 (1987).  "Probable cause for the issuance of a

search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). Courts must base a probable cause determination on the totality of the circumstances and consider the probabilities. Jones, 179 N.J. at 389 (citing Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

A search warrant is presumed valid. State v. Bivins, 226 N.J. 1, 11 (2016). A defendant challenging the validity of a search warrant bears the burden of proving "there was no probable cause supporting the issuance of the warrant . . . ." Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)).

"[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389). However, "[c]ourts . . . should sustain the validity of a search only if the finding of probable cause relies on adequate facts." Boone, 232 N.J. at 427 (quoting Jones, 179 N.J. at 388-89). This is because "the scope of a lawful search is 'defined by the object of the search and the places in which there is

14

probable cause to believe that it may be found.'" Marshall, 199 N.J. at 611 (quoting Garrison, 480 U.S. at 84). We will reverse an order authorizing a search warrant that is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

We begin with J.P.-P.'s challenge to the scope of the warrant. He argues the motion court erred when it found the State established probable cause to search the cellphone for evidence: (1) relating to the period April 1, 2025, to June 17, 2025; and (2) associated with applications other than WhatsApp and standard text messaging. J.P.-P. notes Y.C. told police the sale took place approximately three weeks before the June 16, 2025 interview, in May 2025, and did not suggest he communicated with J.P.-P. about the sale in April. He also argues Y.C. identified only WhatsApp and standard text messaging as the applications he used to discuss the sale with J.P.-P., negating any finding there was probable cause that data on the cellphone associated with other applications would contain evidence of criminal activity.[6]

---

[6] In the recording of his police interview, Y.C. stated he communicated with J.P.-P. "mostly through Snapchat[,]" a messaging application, but did not state he used Snapchat to communicate about the handgun sale. Stickno does not mention Snapchat in his affidavit.

A-0125-25

Having reviewed the record, we agree the State did not establish probable cause to search the entire contents of the cellphone for evidence of criminal acts. We are guided in our analysis by our holding in State v. Missak, 476 N.J. Super. 302 (App. Div. 2023). In that case,

> [t]he State allege[d] that prior to his arrest, [Missak] used two online chatting applications to communicate with an individual he believed was a fourteen-year-old girl, solicited the child's agreement to meet him for a sexual encounter, and traveled to an agreed upon location to perform sex acts with her. The arrest occurred, and his cellular phone was seized, after [Missak] arrived at the location and discovered his online communications had been with [a] United States Department of Homeland Security Special Agent . . . .

> [Id. at 307.]

The agent submitted a certification in support of an application for a CDW for Missak's cellphone detailing the communications exchanged between her and Missak using the messaging applications Skout and Kik over two days. Id. at 308-09. In addition, the

> certification asserted that based on knowledge [the agent] obtained during her participation in an "undercover chat investigation," she had "probable cause to believe" the cellular phone seized from [Missak] following his arrest "contain[ed] evidence of" two "[s]pecified [c]rimes" – luring and attempted sexual assault – allegedly committed on December 8 and 9, 2021.

[Id. at 308-10.]

The agent

> further represented that based on her training and experience, proving who used, controlled, or accessed an electronic device, and who entered, controlled, or saw data on it, is generally important to an investigation and "requires examination of data that, on its face, might be innocent, such as registry information and files accessed around that time." Based on that assertion, and the other facts set forth in the certification, [the agent] stated a "forensic examiner must be allowed to access and examine ALL of the data on a computer, electronic device, or storage media."
>
> [The agent] also stated that computer storage devices, including mobile devices, generally store the equivalent of thousands of pages of information. [The agent] averred that "a suspect may try to conceal criminal evidence" and "might store it in random order with deceptive file names." [She] asserted that, for those reasons, the search may require an examination of "all the stored data to determine which particular files are evidence or instruments of crimes."

[Ibid.]

Thus, the agent "requested the warrant authorize the State to 'access, search, forensically examine, and document all information contained within' [the cellular phone] for evidence relating to offenses involving the exploitation of children[,]' specifically involving the crimes of luring and attempted sexual assault [Missak] allegedly committed on December 8 and 9, 2021." Ibid.

17

A-0125-25

More particularly, [the agent] sought a warrant authorizing a search of the phone's

> stored electronic data, encrypted or password protected files/data, the assigned cellular number, cellular billing number, address book/contact(s) information, all recent calls, to include dialed, received, missed, erased calls, duration of said calls, any Internet access information, incoming and outgoing text messages, text message content, any stored pictures, stored video, calendar information, Global Positioning System (GPS) data, memory or Secure Digital Memory cards (SD cards) and any other stored information on said mobile device that will assist in the continuation of this investigation.

[Id. at 310-11.]

"The court granted the State's search warrant application[,]" after finding the agent's "certification established probable cause to believe the cellular phone 'w[ould] yield evidence of the crimes of' luring and attempted sexual assault." Id. at 311. "The warrant authorized the State to 'examine' the cellular phone 'with necessary and proper assistance.'" Ibid.

> The State moved for an order compelling [Missak] to provide the phone's passcode to allow the search of the device authorized by the warrant. [Missak] filed a cross-motion to quash the search warrant based on claims: the search warrant constituted an unconstitutional general warrant that was not supported by probable cause; and the warrant did not

18

A-0125-25

set forth the places to be searched with constitutionally required particularity. [Missak] also argued the State's motion to compel disclosure of the passcode should be denied because the search warrant was invalid.

After hearing argument, the motion court rendered a written decision finding [the agent's] certification established probable cause for a search of all the phone's contents and data . . . . The court further determined the warrant was sufficiently particular because it authorized a search of the phone's contents and data, and [the agent's] certification supported that broad search.

[Ibid.]

On leave to appeal, Missak argued the CDW was invalid because the agent's certification did not establish probable cause to search the phone's entire contents. Id. at 317. He argued the State established probable cause only with respect to the crimes of luring and attempted sexual assault committed on December 8 and 9, 2021, and the CDW, therefore, should be limited to a search for evidence related to those crimes, dates, and the applications allegedly used in furtherance of those crimes. See id. at 317-18. Missak further argued the warrant was not "supported by any facts establishing a reason to believe all the phone's various contents, information, and data may include evidence of the crimes for which the warrant was sought and he [was] charged." Ibid.

We agreed and reversed the order denying Missak's motion to quash the warrant. Id. at 307. We began our analysis by noting

> [t]he State's, [Missak's], and amici's briefs on appeal highlight[ed] the extensive and voluminous information that is stored on a cellular phone. They also offer[ed] various and conflicting contentions concerning the way in which information may be saved, stored, manipulated, and maintained on electronic devices, including cellular phones. Their conflicting contentions concerning issues related to electronic data stored on personal devices raise important and challenging issues for law enforcement, the citizenry, and the courts during criminal investigations and prosecutions, especially in the application of the state and federal constitutional protections against unreasonable searches and seizures.
>
> [Id. at 318.]

We continued:

> Discerning where evidence of a crime may be found on a cellular phone is a function of complex technology that changes frequently. [The agent's] certification suggests the complexity of a cellular phone's technology – she generally asserts that reaping pertinent evidence from a cellular phone requires expert foraging at laboratories using complex computer applications and equipment. Similarly, amici submit numerous articles and literature pointing to the complexity of the digital landscape presented by data contained in cellular phones, the manner in which such data may be searched and retrieved, and the constitutional issues presented by law enforcement's efforts to traverse the landscape in search of evidence.

20

[Id. at 319.]

We concluded that "[a]lthough changing technology presents endless challenges for the application of our constitutional principles" to a search of a cellular phone, "[w]e need only consider the four corners of [the agent's] certification and apply fundamental tenets of constitutional law" to determine the validity of the warrant. Ibid. We noted the agent's certification expressly sought a search warrant only for evidence pertaining to the two crimes Missak allegedly committed on two specified days. Id. at 320. In addition, we observed Missak did "not dispute [the agent's] certification established probable cause permitting a search of the phone's contents and data limited to the text communications between" Missak and the agent on December 8 and 9, 2021, through the two applications noted in the certification and "any alleged phone communications between Missak and [the agent] on those two days." Ibid. Yet, the warrant "authorize[d] a search of everything else on the phone in the absence of any facts in [the agent's] certification supporting probable cause finding[] [Missak] committed any crimes prior to December 8, 2021, or the phone's other information and data will contain evidence of any crime, including the charged crimes." Ibid.

A-0125-25

We rejected the agent's purported justification to search the phone's entire contents because Missak may have altered files on the phone to disguise what they contain and avoid the recovery of information and data for which probable cause was established. Id. at 320-21. We concluded "[t]he justification falls short of the constitutional mark . . . because establishing probable cause for a search requires more than a showing of what 'may' have occurred." Id. at 321.

We rejected the argument a search of the phone's entire contents "was necessary to demonstrate [Missak] possessed and used the phone 'around the time' the phone was employed in the commission of the alleged crimes." Ibid. We found

> [w]hat is missing from [the agent's] certification are any facts establishing probable cause for an examination of data and other information, whatever it might be, that either predates [Missak's] alleged commission of the crimes or does not constitute evidence of his use of the phone 'around the time' the crimes were committed.
>
> [Id. at 321-22.]

We therefore found "[t]he search warrant clearly permit[ted] a search for data and information in various forms on the cellular phone for which the State failed to establish probable cause to believe may contain evidence of the crimes for which [Missak] has been charged and for which the search warrant was

22

sought." Id. at 322. For those reasons, we reversed the motion court's order and

quashed the search warrant. Ibid. We concluded:

> The State is free to seek a new search warrant based on whatever facts are available to it that establish probable cause to believe the various information and data the State requests to search contain evidence pertaining to the criminal charges pending against [Missak].
>
> Given the complexity of the technology concerning a cellular phone's data and information, and law enforcement's ability to cull through the information and data, any future search warrant application should address such issues to allow the court to determine the locations within the data and information on the cellular phone there is probable cause to believe relevant information concerning the crimes charged may be found. That information will assist the court in determining with particularity the locations within the data and information on the cellular phone for which there is probable cause to search.
>
> [Id. at 323.][7]

---

[7] On remand, the State again relying on a certification from the agent, applied for an order permitting a search of the entire contents of Missak's cellphone pursuant to the CDW. State v. Missak, Docket No. A-2602-23 (App. Div. Sep. 3, 2025) slip op. at 14, leave to appeal granted, 263 N.J. 321 (2026). The only material difference between the first and second certifications was the addition of hypotheticals about how information and data on a cellular phone might be stored and manipulated. Id. at 14-15. The motion court granted Missak's cross-motion to quash the warrant, finding the State failed to establish probable cause to justify searching the entire contents of his cellphone. Id. at 17. The motion court found "[w]ithout any showing that the State has probable cause to search outside the specific applications used by [Missak] to commit the charged crimes" a search of the entire contents of his cellphone was not reasonable. Id. at 19. On leave to appeal, we affirmed. Id. at 29.

A-0125-25

The evidentiary deficiencies that led us to conclude the breadth of the CDW in <u>Missak</u> was not supported by probable cause are present here. Stickno's affidavit, which recites the statements Y.C. made during his police interview, did not provide support for the proposition Y.C. used any application other than WhatsApp and standard text messaging to communicate with J.P.-P. about the handgun sale. Y.C. described J.P.-P.'s participation in one illegal transaction on an unspecified date in May 2025 and did not implicate him in prior or subsequent criminal activity. Y.C. identified the two cellphone applications he used to discuss the sale with J.P.-P. The State produced no evidence data on J.P.-P.'s cellphone associated with applications other than WhatsApp and standard text messaging would contain evidence of alleged criminal acts.

Stickno identified no facts suggesting J.P.-P. engaged in manipulation or deletion of data to disguise its nature or evade detection by investigators. Nor did Stickno state facts relating to the techniques necessary to access the data on the cellphone. There is nothing in the record suggesting it is necessary to access all the data on J.P.-P.'s cellphone to access the data associated with the two applications he allegedly used in connection with the sale. We conclude, therefore, the scope of the CDW is not supported by probable cause because it

permits the State to search the contents of J.P.-P.'s cellphone beyond the data associated with WhatsApp and standard text messaging.

J.P.-P. also challenges the motion court's finding the cellphone belonged to him because it was in his possession when he was arrested. We agree the motion court erred when it refused to watch the body worn camera recordings of J.P.-P.'s arrest before making that finding. Contrary to the motion court's finding, J.P.-P. proffered evidence he argued contradicted Stickno's statement the cellphone was obtained from J.P.-P.'s person when he was arrested. The court did not weigh that evidence against Stickno's affidavit.

We, therefore, vacate the September 4, 2025 order both because it permits a search of the cellphone beyond data relating to the WhatsApp and standard text messaging applications and is based on a finding the cellphone was in J.P.-P.'s possession when he was arrested.

The State is free to seek a new search warrant based on whatever facts are available establishing probable cause to believe the various information and data the State requests to search contain evidence pertaining to the charges pending against J.P.-P., and that the cellphone was in J.P.-P.'s possession at the time of his arrest.

A-0125-25

Given the complexity of the technology concerning a cellular phone's data and information, and law enforcement's ability to cull through the information and data, any future search warrant application should address such issues to allow the court to determine the locations within the data and information on the cellular phone where there is probable cause to believe relevant information concerning the criminal activity charged may be found. That information will assist the court in determining with particularity the locations within the data and information on the cellular phone for which there is probable cause to search. If the State renews its application to search the cellphone, the motion court shall review the body worn camera recordings of J.P.-P.'s arrest.

We offer no opinion with respect to the outcome of any new application to search the cellphone, with one exception. In the event State again applies to search the cellphone and the court determines the cellphone was in J.P.-P.'s possession when he was arrested, we find sufficient support in the record for the limited date range approved in the CDW. Y.C. admitted the sale of the handgun took place sometime in May 2025, approximately three weeks before his June 16, 2025 interview. However, he also admitted he made an initial expression of interest to J.P.-P. in purchasing the gun, viewed a video of the seller's inventory of weapons, negotiated the circumstances in which the sale would take place,

26

recruited A.O. to participate in the transaction, transmitted funds to A.O., and arranged for the seller's transportation to Kearny all before the transaction took place.

While Y.C. suggested during his police interview the final steps leading to the sale took place over the three days preceding the transaction, he did not state with certainty when he first suggested his interest in purchasing a handgun to J.P.-P. Because Y.C. did not identify the date on which he first contacted J.P.-P. about purchasing a handgun, it was reasonable for the court to permit a search of data on J.P.-P.'s cellphone for a period beginning approximately forty-five days prior to J.P.-P.'s arrest. We agree with the CDW court's conclusion the State established it is reasonably likely evidence of J.P.-P.'s involvement in the illegal sale would be discovered in data on his cellphone associated with the period April 1, 2025, to June 17, 2025.

B.     The Order Compelling J.P.-P. to Disclose the Password.

We turn to the provisions of the order compelling J.P.-P. to disclose the password to unlock the cellphone. The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A person cannot be required to incriminate himself "by his own compelled testimonial communications." Fisher v. United States, 425

27

U.S. 391, 409 (1976). A statement is testimonial if it "reveal[s], directly or indirectly, [one's] knowledge of facts" or "disclose[s] the contents [of one's own mind]." Doe v. United States, 487 U.S. 201, 211, 213 (1988).

The privilege against self-incrimination includes incriminatory testimony given in court and other forced testimony that "would furnish a link in the chain of evidence needed to prosecute the claimant." United States v. Hubbell, 530 U.S. 27, 38 (2000) (quoting Hoffmann v. United States, 341 U.S. 479, 486 (1951)). The "accused has the right to remain silent and no negative inference can be drawn against him or her for maintaining that silence." State v. Scherzer, 301 N.J. Super. 363, 435-36 (App. Div. 1997).

In Andrews, the Court recognized "where ownership and control of an electronic device is not in dispute, its passcode is generally not substantive information, is not a clue to an element of or the commission of a crime, and does not reveal an inference that a crime has been committed." 243 N.J. at 483. The information conveyed by a defendant's disclosure of the password – that the defendant had control of the cellphone – is a foregone conclusion constituting an exception to the Fifth Amendment. Id. at 480. Thus, the Court held under the foregone conclusion exception, a trial court may require a defendant to disclose the passcode to his or her cellphone if the State can demonstrate that:

the passcode exists; the cellphone was in the defendant's possession when seized; the defendant owned and operated the cellphone thereby establishing his or her knowledge of the passcode; and the passcode enables access to the cellphone's contents. Id. at 478-81.

We analyze a court's decision on "the State's motion to compel [a] defendant to turn over evidence using the same standard we employ to review a defendant's motion to suppress evidence." State v. C.J.L., 471 N.J. Super. 477, 483 (App. Div. 2022). We will uphold the motion court's finding the cellphone was seized from J.P.-P. if it is supported by sufficient credible evidence in the record. State v. A.M., 237 N.J. 384, 395 (2019). However, we owe no deference to the motion court's legal conclusions, which we review de novo.

Because we have already determined the motion court erred when it found, without reviewing the body worn camera recordings, the cellphone was in J.P.-P.'s possession when he was arrested, we vacate the September 4, 2025 order to the extent it compels J.P.-P. to disclose the password to the cellphone obtained by police at the time of his arrest.

On remand, the State may renew its motion. If the motion is renewed, the remand court must review the body worn camera recordings of the officers present at J.P.-P.'s arrest and make the necessary findings of fact and

conclusions of law to determine if J.P.-P. was in possession of the cellphone. We offer no view on the outcome of such a motion.

We have carefully considered J.P.-P.'s remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division